

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 1:20-CR-15 |
| XUEYONG WU, | Hon. Leonie M. Brinkema |
| Defendant. | |

STATEMENT OF FACTS

The United States and the Defendant, XUEYONG WU (hereafter "WU"), stipulate that the allegations in Count 3 of the indictment and the following facts are true and correct, and that had the matter gone to trial, the United States would have proven the following facts beyond a reasonable doubt:

1. From in and around at least 2016 and continuing through in and around December 2019, within the Eastern District of Virginia, and elsewhere, the defendant WU, did knowingly and intentionally combine, conspire, confederate, and agree with others, both known and unknown, to commit an offense against the United States, in violation 18 U.S.C. § 1956, to wit: to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, conspiracy to distribute cocaine, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the conspiracy, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1956(h).

2. WU joined a conspiracy whose membership and leadership, at various times, included Xizhi Li (Li), Jianxing Chen (J.Chen), Qiyun Chen (Q.Chen), George Shao Min Yu (Yu), and others. The purpose of this organization was to help foreign drug trafficking organizations (DTOs) gather, launder, and repatriate proceeds derived from the DTOs' unlawful drug trafficking activities in the United States. Those drug trafficking activities primarily involved cocaine.

3. The conspiracy cultivated relationships with DTOs to obtain as many "contracts" as possible to move and launder their United States-based drug proceeds. In exchange, WU and his co-conspirators received a "commission" for conducting these pick-ups and arranging these transactions, which represented a percentage of the involved funds.

4. WU and his co-conspirators used secretive and clandestine means to facilitate the movement of these proceeds within the United States. For example:

   a. WU and his co-conspirators transported or caused others to transport drug proceeds across the United States so that additional money-laundering transactions could be conducted by other individuals several states away from where the proceeds were generated;

   b. Co-conspirators operated or had access to bank accounts in the United States, China, Mexico, and elsewhere. Some of these accounts were operated under the names of fictitious identities. These co-conspirators used these accounts to deposit and conduct financial transactions with drug proceeds. This included transmitting the funds to accounts in China where the money was used to purchase Chinese goods. It also included using the funds to purchase consumer goods in the United States that were ultimately shipped to China for resale.

Successful completion of these transactions generated Chinese currency known as renminbi (RMB). Merchants in Latin America seeking to import goods from China purchased RMB from members of the conspiracy using the local currency of the Latin-American country. These merchants used the RMB they bought from the conspiracy to purchase goods in China and import them into Latin-American countries. Acquisition of the Latin-American currencies, often Mexican pesos, enabled conspirators, like Li, to provide the DTOs with their drug proceeds in the currency used in their home countries which disguised the illegal nature and source of the funds used by the DTOs.

5. During the relevant period, WU and J.Chen worked together to arrange the transportation of drug proceeds in the United States. WU received a commission for his participation in these transactions.

6. The conspiracy employed several couriers whose job was to conduct pickups of drug proceeds in the United States owed to foreign DTOs, including the period running from throughout 2016 and the events in 2017 described in paragraph 8.

7. One such courier was an individual hereafter known as cooperating source-1 (CS-1). Throughout 2016, CS-1 picked up drug proceeds in Virginia Beach, Virginia, located within the Eastern District of Virginia. During this same period, CS-1 traveled through the Eastern District of Virginia to obtain and transport drug proceeds. CS-1 maintained a ledger detailing many of the trips. Based on CS-1's recollection and the ledger, the amount of money transported by CS-1, largely through the Eastern District of Virginia, was approximately $4,144,759, and consisted of more than three trips in each calendar year for cumulative amounts of more than $100,000 for each calendar year.

8. In and around February 2017, WU organized and participated in pickups of drug proceeds at or near Chicago, Illinois. WU worked with Q.Chen, among others, to arrange these transactions. Law enforcement seized money whose transfer was arranged by WU and Q.Chen, including approximately $181,901 that was seized on or about February 22, 2017, at or near Chicago, Illinois.

9. The acts described above were done willfully and knowingly and with the specific intent to violate the law, and not by accident, mistake, inadvertence, or other innocent reason. This statement of fact does not contain each and every fact known to the defendant and to the United States, and it is not intended to be a full enumeration of all the facts surrounding the defendant's charges.

10. The defendant waives any rights that the defendant may have under Fed. R. Civ. P. 11(f), Fed. R. Evid. 410, the United States Constitution, and any federal statute or rule in objecting to the admissibility of the Statement of Facts in any proceeding.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

Date: 6/29/2020

By: _____
David A. Peters
Michael P. Ben'Ary
Assistant United States Attorneys
Eastern District of Virginia
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Tel.: (703)-299-3700

Deborah Connor
Chief, Money Laundering and Asset Recovery
Section, U.S. Department of Justice, Criminal
Division

_____ FOR
Stephen Sola
Kerry Blackburn
Trial Attorneys

Defendant's Stipulation and Signature

After consulting with my attorney, I hereby stipulate that the above Statement of Facts is true and accurate, and that if the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Date: 6-29-20   _____
Xueyong Wu,
Defendant

Defense Counsel's Signature

I am the attorney for Defendant in this case, Xueyong Wu. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is informed and voluntary.

Date: 6-29-20   _____
Edward MacMahon, Esq.
Counsel for Defendant

6