**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| vs. | ) ) ) | Case No. 1:20-cr-15 (LMB) |
| **XUEYONG WU,** | ) ) ) | |
| **Defendant.** | ) ) | |

**XUEYONG WU'S
MEMORANDUM IN AID OF SENTENCING**

**1. Introduction**

On September 29, 2020, Xueyong Wu, a 41-year-old Chinese national with no prior criminal record, will appear before this Court to be sentenced, on his plea of guilty, to one charge of conspiracy to commit money laundering in violation of 18 U.S.C.§ 1956(h). The maximum penalties for this offense are a term of 20 years of imprisonment, a fine of $500,000, or twice the value of the funds, whichever is greater, a special assessment of $100.00, and a supervised release term of a maximum of 3 years. Mr. Wu has been in custody since he was arrested on December 11, 2019.

The issue for the Court to resolve at sentencing is what sentence is "sufficient, but not greater than necessary" to comply with the purposes of federal sentencing as set forth in 18 U.S.C. § 3553 (a). The answer to that question, it is respectfully submitted, is that a sentence of 24 months of active incarceration is sufficient and fair sentence in this case. Mr. Wu, as is described in detail below and in the Report of Presentence Investigation ("PSR"), is an otherwise law-abiding family man of Chinese descent who resides in Guatemala. He has no prior criminal history, has

accepted full responsibility for his actions and complied fully with all of the terms of his Plea Agreement. And, after Mr. Wu serves the full sentence this Court imposes – as an alien he will not be eligible for early release to a halfway house - he will be removed from the United States by a deportation process that may require Mr. Wu to remain in immigration custody even after he is released from serving this sentence. All of these factors support imposition of the suggested sentence.

### 2. Guidelines

The Probation Office has calculated Mr. Wu's Guideline's Total Offense Level at 33 with a criminal history category of 1. This calculation was made after recognizing that Mr. Wu had accepted responsibility for his actions and has no prior criminal history. As such, the guidelines call for a sentence range of between 135 to 168 months. This is the calculation that was provided as part of the Plea Agreement entered into by Mr. Wu. (Plea Agreement, Section 4, p. 3)(D.E. 34)

As the sentencing guidelines are merely advisory, the Court is allowed to render any sentence - up to the maximum jail time or as little as no jail time - that it believes adequately addresses the purposes of federal sentencing law under 18 U.S.C. § 3553(a). Legally, of course, the sentencing guidelines range is only advisory. In Gall v. United States, 552 U.S. 38 (2007), the Supreme Court rejected the Government's argument that sentences outside of the advisory guidelines range should be subjected to exacting scrutiny on appeal, because, in part, the guidelines are only one of the factors that the Court should consider when imposing a sentence. As the Court explained, the calculation of the guidelines sentencing range is just the "starting point and the initial benchmark" from which sentencing courts should begin to make their sentencing determinations. Gall at 49. That is because, pursuant to United States v. Booker, courts must consider the suggested guidelines

as just one of seven co-equal statutory sentencing factors enumerated in 18 U.S.C. § 3553 (a)(1)-(7). United States v. Booker, 543 U.S. 220, 259-60 (2005). Those seven factors are the nature of the offense and the characteristics of the defendant, the kinds of sentences available, the guidelines, any pertinent policy statements, the need to avoid unwarranted sentencing disparities, and any need to provide restitution.

While the Court must begin its analysis with a calculation of the advisory guidelines sentencing range, the sentencing court is then free, in light of the other statutory sentencing factors, to impose an entirely different sentence that it alone determines is fair under the circumstances. This is because the Court, consistent with Rita, is free to disagree, based on the entirety of the § 3553 sentencing factors, with the U.S.S.G.'s "rough approximation" of the appropriate sentence in a given case. In the end, the primary directive is to determine under 18 § 3553 (a) what sentence is sufficient in any particular case. Here, the suggested sentence of 24 months of active incarceration is within the power of this Court to impose and entirely fair given Mr. Wu's personal involvement in the crimes alleged and his acceptance of responsibility.

**3.     Legal Standard for Sentencing**

Pursuant to 18 U.S.C. § 3553(a)(1), the Court is required, in determining the appropriate sentence, to consider, among other elements, the "nature and circumstances of the offense and the history and characteristics of the defendant." Application of these factors to Mr. Wu's history and personal characteristics easily supports the conclusion a sentence of 24 months of active incarceration would be a fair sentence. There is no doubt that Mr. Wu recognizes the seriousness of the crime to which he entered a guilty plea and that he has accepted full responsibility for his actions. There is also no doubt that his conviction and sentence in this case will adequately serve the purpose of adequate deterrence to criminal conduct. Finally, this Court can be assured that

there is no reason for the Court to act so as to protect the public from further crimes by Mr. Wu who, again, has no prior or subsequent criminal record, and will be deported when he finishes his sentence. The Court should also be mindful that given Mr. Wu's status as an alien, if the Court imposes any sentence of incarceration, Mr. Wu may be designated by the Bureau of Prisons to serve time in a higher security facility than would a United States citizen convicted of the same crime which is additional punishment and an additional factor for the Court to consider in fashioning a sentence. Finally, as a deportable alien, Mr. Wu will not be eligible for a halfway house designation which would otherwise reduce his term of active incarceration. For all of these reasons, the Court should depart from the guidelines and issue a sentence of 24 months active incarceration. It is submitted that such a sentence adequately addresses the sentencing factors set forth in 18 U.S.C. 3553 (a) as described below.

**4.      Mr. Wu's. Personal History and Characteristics**

Mr. Wu's personal history and characteristics are well described in the PSR and will not be restated completely here. However, the Court should know that Mr. Wu is a very simple man who has only has the equivalent of a fourth or fifth grade education which he obtained in China. He speaks no English at all. He was raised by his parents in China and went to work to help support his family at the age of 11 or 12. In 2004, like many other ethnic Chinese, he moved from China and went to Guatemala where his brother was working in a Chinese restaurant. He has resided in Guatemala City since 2004 and has purchased a home there that he shares with his wife and two small children. He is the father of two girls who are 6 and 5. Mr. Wu is very loved by his family and his wife calls and writes often to counsel worrying about Mr. Wu's health in custody during the pandemic and always hoping that Mr. Wu can come home and resume raising his children with her. He is very fortunate to have such a loving and supportive spouse.

The Court has received several poignant letters from Mr. Wu's family that should give the Court some visibility into Mr. Wu's life and character as a family man. His mother Mingzhu Feng writes to tell you how kind her son has been to her over the years and how he has saved money to buy her medicine she could not afford. "Without having much money to buy medication for my asthma, Xueyong always tries to save money to try to take care of me, such as buying medication with the money that he does by selling vegetables and other farm products to other villagers." She hopes that her son can go home one day and help raise his daughters.

His wife Libing Zhen, who thanks the staff at the ADC for protecting her husband during the COVID epidemic, writes of a "caring, loving and responsible" man who cooks for the family and is an equal partner in raising her children. She tells you openly about the stress that her husband's arrest has caused the family and that the children cried when they finally saw their father on a video call. She makes no excuses for his behavior or criminal activity but beseeches the Court to allow her husband to reunite with her family. She even offers to supervise her husband to make sure he does not break the law again.

His older sister Wu Xueya writes that when she was 17 and the family was facing hard times, her younger brother Xueyong began to support the family so that his sister could go back to school. She writes that her brother is a dedicated family man who loves his wife and daughters and describes a loving son who dropped his work to go home and care for his father while he was ill. She tells you that her brother is a "good man" and that the family misses him very much and would love for him to come home.

His cousin Yanett Feng Mo, who has acted as the translator to get these letters to the Court, writes that her uncle who is a "good son, good husband and good father to his children." She asks that the Court take into consideration his "good character" and to let him come back to his family.

She also writes eloquently as to the damage that Mr. Wu's criminal behavior has caused his own family while making no excuses for Mr. Wu.

Lastly, his cousin Jennifer J. Feng-Mo writes lovingly of her cousin who she says has helped her in many ways. She writes that Mr. Wu is a "kind person" who has "expressed remorse for his actions." She only asks the Court to consider Mr. Wu's family life and his prior good acts when you consider an appropriate sentence in this case.

As to Mr. Wu himself, since he was arrested, he has accepted full responsibility for his actions in every way possible. Counsel can fully explain that fact to the Court at a sidebar at sentencing. In addition, Mr. Wu is prepared to allocate and tell the Court how much he regrets his actions and the damage that he caused to his family and the general public.

5. **The Need to Avoid Unwarranted Disparities in Sentencing**

It is submitted that a 24-month sentence is appropriate and would not result in any disparities with similarly situated defendants in other cases involving first time convictions of the same type of offenses. First, and again at sidebar, counsel will address the related cases described in the PSR. Mr. Wu's involvement in this case is substantially minor compared to the listed cases which cannot set basis for a meaningful comparison as to sentencing. Here, though the guidelines do call of a sentence of 135 to 168 months that range is calculated using the amount of funds involved as "approximately $4,144,759." (Statement of Facts, P. 3)(D.E. 36) That large sum of money resulted in a guidelines enhancement of 18 points pursuant to USSG § 2B1.1(1)(J). Mr. Wu did agree as part of his plea that this calculation was appropriate even though that substantial sum is not attributed to Mr. Wu's personal activities alone. That large sum reflects the proceeds of a conspiracy of which Mr. Wu played a relatively small but nonetheless important role. Without lessening Mr. Wu's responsibility for his own actions or objecting to the guidelines

calculation, were the Court to look at Mr. Wu's actions alone, the guidelines sentence would be greatly reduced. When Mr. Wu entered his plea, the Court the Court inquired of Mr. Wu as to how much he had personally earned in commissions as result of the transactions identified in paragraph 5 of the Statement of Facts. The response was, to the best of my recollection, was less than $10,000.00. Pursuant to USSG § 2B1.1(1)(B), a "loss" amount of $10,000 would result in a two point enhancement which would lower the guidelines to level 17, or a guideline range of 24 to 30 months which is within the range requested. Again, nothing about this argument should be taken to minimize Mr. Wu's acceptance of responsibility but it does demonstrate to the Court how an examination of Mr. Wu's particularized conduct could alter the sentencing analysis.

6. **The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, to Provide Just Punishment, to accomplish Specific and General Deterrence, and to Provide Educational, Vocational or Correctional Treatment**

As is set forth in detail above, and as can be described in a sidebar, a term of 24 months of active incarceration is sufficient to promote respect for the law, to provide deterrence and to provide just punishment.

There is no need for any educational, vocational, or correctional treatment.

7. **Conclusion**

In closing, the most compelling reason for the Court to impose a 24-month total sentence of active incarceration is the personal integrity of Mr. Wu and his fast and sincere decision to accept responsibility for his actions. There is no doubt that Mr. Wu made a serious error in judgment by engaging in the criminal actions for which he must be fairly sentenced. He has acknowledged that what he did was wrong and has done everything possible to accept responsibility. What Mr. Wu respectfully requests is that the Court show mercy on him and

allow him to return home, help raise his young family and begin rebuilding the life and reputation that he alone is responsible for damaging.

Dated:   September 22, 2020         **XUEYONG WU**
                                    **By Counsel**

                                    _____/s/_____
                                    Edward B. MacMahon, Jr. (VSB # 25432)
                                    Edward B, MacMahon, Jr., PLC
                                    107 East Washington Street
                                    P. O. Box 25
                                    Middleburg, Virginia   20118
                                    (540) 687-3902
                                    (540) 687-6366 (facsimile)
                                    ebmjr@macmahon-law.com
                                    *Counsel for Xueyong Wu*

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record

                                    _____/s/_____
                                    Edward B. MacMahon, Jr. (VSB # 25432)
                                    Edward B. MacMahon, Jr., PLC
                                    107 East Washington Street
                                    P. O. Box 25
                                    Middleburg, Virginia   20118
                                    (540) 687-3902
                                    (540) 687-6366 (facsimile)
                                    ebmjr@macmahon-law.com
                                    *Counsel for Xueyong Wu*