```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
                         ALEXANDRIA DIVISION

------------------------------x
                              :
UNITED STATES OF AMERICA,     : Criminal Action No.
                              :
         versus               : 1:20-cr-15
                              :
XUEYONG WU,                   : September 29, 2020
                              :
            Defendant.        :
------------------------------x

         The above-entitled Sentencing hearing was heard before
the Honorable Leonie M. Brinkema, United States District
Judge.

                         A P P E A R A N C E S

  FOR THE GOVERNMENT:      DAVID A. PETERS, AUSA
                           US Attorney's Office
                           2100 Jamieson Avenue
                           Alexandria, VA 22314


  FOR THE DEFENDANT:       EDWARD B. MACMAHON, ESQ.
                           Law Offices of Edward B MacMahon Jr.
                           P.O. Box 25
                           107 East Washington Street
                           Middleburg, VA 20118




 OFFICIAL U.S. COURT REPORTER:     MS. TONIA M. HARRIS, RPR
                                   United States District Court
                                   401 Courthouse Square
                                   Fifth Floor
                                   Alexandria, VA 22314
```

**P R O C E E D I N G S**

(Court proceedings commenced at 10:37 a.m.)

THE DEPUTY CLERK: Criminal Case 20-15. United States of America versus Xueyong Wu.

Would counsel please note their appearances for the record.

MR. PETERS: Good morning, Your Honor. David Peters for the United States, and I'm joined by my colleague from main Justice, Kerry Blackburn.

THE COURT: Good morning.

MR. MACMAHON: Good morning, Your Honor. Edward MacMahon for Mr. Wu.

THE COURT: Good morning, Mr. MacMahon. The defendant is here. We need to have the interpreter affirmed.

(Interpreter affirmed.)

THE INTERPRETER: Yes, I do.

THE COURT: All right. Mr. MacMahon, have you had enough time to go over the presentence report yourself and with your client?

MR. MACMAHON: I have, Your Honor. Thank you. I had to do the same process I did before where I would send it out and have it translated and sent to Mr. Wu.

THE COURT: All right. Are there any factual corrections, changes, additions, or deletions that you want me to report?

Tonia M. Harris OCR-USDC/EDVA 703-646-1438
EASTERN DISTRICT OF VIRGINIA

1      MR. MACMAHON:  No, Your Honor.

2      THE COURT:  Did you know the probation office has

3 calculated the offense level here as a level 33?

4      Your client has a criminal history of 1.  The

5 advisory guideline range is 135 to 168 months.  So the

6 government is graciously asking for a variant sentence of 90

7 months, as you know.

8      There's a one to three-year period of supervised

9 release.  There's a fine range of $35,000 to $350,000 and a

10 $100 special assessment.  You're not disputing those

11 calculations, correct?

12     MR. MACMAHON:  No, Your Honor.  That's part of the

13 plea agreement as well.

14     THE COURT:  All right.  That's fine.

15     Then let me hear first from the United States.

16     MR. PETERS:  Your Honor --

17     THE INTERPRETER:  Your Honor, he said that there's a

18 lot of static.

19     (A pause in the proceedings.)

20     THE COURT:  Okay.  Is it all right now?

21     THE INTERPRETER:  Okay.

22     MR. PETERS:  Your Honor, the Court is well familiar

23 with this case and the body of cases here so I won't belabor

24 too many of the points, except to say that what the Court has

25 in front of it today with respect to this plea is admission by

the defendant to engaging in a money laundering scheme responsible for moving a substantial amount of drug assets generated by the sale of narcotics, cocaine in particular, in this country. And it's no dispute, as we've argued in our papers, that the international narcotics trade relies on the ability to extract the value of the sale of their product. There is no point to trafficking drugs, cocaine in particular, into this country unless you can get the money out. And it's the actions of people, such as the defendant and his co-conspirators, that allow large, powerful, and violent drug trafficking organizations to profit from the sale of these elicit products in the United States. He is the reason that -- he and those like him, are the reason that it has success.

THE COURT: You're not claiming that this defendant has any managerial or organizational role; he's basically just a -- almost like a runner in a large drug conspiracy?

MR. PETERS: I would -- I agree he's not a manager. There is no managerial adjustment or organizational adjustment and we don't dispute that fact. And in fact, one of the reasons we ask for the variant sentence in this case is because a co-conspirator, a co-defendant, Qiyun Chen, in a previous prosecution before this Court, was sentenced to 120 months. That person did have a managerial adjustment. Obviously, this defendant does not. And therefore, we think

1 anything at the 120-month level or beyond the 120-month level
2 is inappropriate.
3     I would take issue with the description that the
4 defendant as a mere runner or courier. I think what the
5 evidence shows and the facts agreed upon, the Statement of
6 Facts show that his role was really more that of accepting a
7 contract or something above him accepting a contract to
8 launder money, generated by drug sales in the United States.
9 And his job was to arrange for the courier services of that
10 money.
11     So to have somebody working for him either directly
12 or perhaps one or two steps removed, go to a location
13 somewhere in the United States, pick up the money from
14 somebody representing the drug trafficking organization, and
15 then bring it to another location where it can be further
16 laundered.
17     I don't think that there would be much dispute that
18 that's generally his role. Does it rise to the level of
19 organization, an organizer or a leader in this conspiracy?
20 Obviously, we've proffered and we believe the answer is no.
21 Is it akin to that of somebody merely couriering money? No, I
22 think it's something above that. And therefore, that's why
23 we've arrived at the recommendation. Thank you.
24     THE COURT: All right. Thank you. Mr. MacMahon.
25     MR. MACMAHON: Thank you, Your Honor. I've been

1  before you enough to know how closely you read all of the
2  filings that you've gotten.
3           Mr. Wu, as you saw from the letters from his family,
4  is a person who is very contrite about what he did.  He's a
5  good father, he's a good son.  There's a lot of good about
6  Mr. Wu separate and apart from what happened here.  And I know
7  the Court will consider that when you try to fashion a
8  sentence.  I get calls and e-mails from his family just hoping
9  that some day he can come home and be a father again.  He's
10 going to address you himself, and I didn't put it in the
11 sentencing memorandum his apology to the Court.
12          But in reality, I would agree with Mr. Peters that
13 he's not just a runner, but he's not much more than just a
14 runner in this thing, Your Honor.  When we talk about -- and
15 we're going to have to have a little bit of a side bar to
16 discuss some of the things that are --
17          THE COURT:  I can anticipate what that's going to
18 be.
19          MR. MACMAHON:  But that's -- the substantial
20 difference between these severe sentences that you gave to
21 people -- and nobody is making light of drug trafficking and
22 the importance of money laundering and drug trafficking.  This
23 case has been an eye opener for all of us, I think, as to how
24 this stuff is done.  And whether it's sophisticated or simple,
25 I can't really tell.  But there's no question that Mr. Wu

1  regrets being involved in it.  And he -- he will proffer to
2  the Court that he will never do it again.
3        Obviously, he's going to be deported.  He's going to
4  sit in immigration.  He's got all kinds of problems serving
5  this sentence as well where he would get a -- go to a higher
6  designation perhaps in BOP then he would otherwise.  And
7  really, I think it's the most important factor to look at.
8  And I think -- and I'm not sure that I have the exact number,
9  but the plea, when you asked him how much money he got from
10 the transaction, from the Statement of Facts, I think it was
11 less than $10,000.
12       And the guideline calculation, which we don't -- we
13 don't -- I'm not saying the guideline calculation is wrong.
14 But the Court, as you know, under 3553, looks at the
15 individual characteristics of a person.  He was not a manager.
16 He's a very low level guy in this case.  And if you look at
17 that, if you look at that calculation and what was Mr. Wu
18 actually involved in himself, as opposed to what's considered
19 a co-conspirator or a liability, and how much this
20 organization -- I think when you get to some of the folks here
21 in this -- whose names are listed, I'm sure the numbers are
22 huge.  I'm sure they're nowhere near even as low as what we're
23 looking at here.
24       THE COURT:  But in your client's case, I think the
25 uncontested number was approximately $4.1 million.

1  MR. MACMAHON: Right. And what that was, Your
2  Honor, that is a document that came from somebody he actually
3  didn't even know, I believe. So they had a runner that they
4  picked up in Virginia and he had a sheet, he had a piece of
5  paper on him and it had that number, if you added everything
6  up. And that was, you know, if I had spoken -- and Wei, one
7  of his co-conspirators -- but if you read that, it's not meant
8  to say that Mr. Wu himself was involved in that.
9  Now, legally he's responsible for it. I'm not
10 stepping away from that. That's not what I'm saying. What
11 I'm asking you, in terms of exercising your discretion, and
12 perhaps even some mercy and to see that his actual role, his
13 benefit that he received in this was really minuscule as to
14 what he said. And if we can approach about these other
15 matters. If you don't want me to, I won't.
16 THE COURT: I don't really at this point. I'm sure
17 I'll hear about it down the road.
18 MR. MACMAHON: I would hope that the Court would
19 take what you obviously anticipate into consideration now.
20 Because it's -- it's very important in terms of his acceptance
21 of responsibility.
22 THE COURT: I am assuming the government is going to
23 want this defendant to stay in this jurisdiction.
24 MR. PETERS: Yes, Your Honor.
25 THE COURT: You need to make sure you work that out

1 with the marshals.

2     MR. PETERS: Yes, Your Honor.

3     THE COURT: Okay.

4     MR. MACMAHON: And the sentence I ask for normally,

5 Your Honor, I never ask you for a sentence. I've been in

6 front of you enough times and half the clients have gotten

7 life so it doesn't matter what I'm asking for.

8     THE COURT: You're asking for one in this case.

9     MR. MACMAHON: I'm asking you for one in this case

10 because I think it incorporates what will happen in the future

11 and when he might be able to go home.

12     THE COURT: Well, and that's the point. What you're

13 asking is not unreasonable if all that happens.

14     MR. MACMAHON: I understand, Your Honor. But I'm

15 just letting you know why I finally asked for a sentence.

16     THE COURT: All right. Let me hear from the

17 defendant. Mr. Wu.

18     THE INTERPRETER: I can hear you, he said.

19     THE DEFENDANT: Honorable Judge, I am here to

20 apologize to Your Honor and everyone else over here. And

21 while I have been here all this time, I feel very sorry and I

22 blame myself, because I realize what I did has created a lot

23 of pain and a lot of damages. I hurt my family members. And

24 I am willing to take up the responsibility of my acts.

25 Because of what I did, I have caused a lot of pain, a lot of

1 concern of my mother, who was very ill, and to my wife. And
2 my child kept on asking my wife, "When daddy will come home?"
3 And my wife told my child that, "I hope that the police will
4 let your father come home very soon." So I feel sorry for
5 what I did because I caused my family members so much pain,
6 and I am willing to change from now on, be a different person.
7       I hope that the honorable judge will let me go home
8 very soon. I will never do this again, and I will not do any
9 illegal acts. I will become a good person. I beg you for
10 mercy. Please allow me to go home so that I can go home and
11 take care of my elderly mother and my family members. And I
12 would like to go back and take care of my wife and my very
13 young daughter.
14       THE COURT: Mr. Wu, the Court understands that you
15 have a supportive family and I did read the letters that were
16 submitted on your behalf. But the drug trade would not exist
17 if it couldn't make money. And the money laundering offense,
18 of which you were involved, is really the life blood of the
19 drug trafficking business.
20       And so the offense for which you've been found
21 guilty is a very serious one and the sentence has to reflect
22 the seriousness of that conduct. At the same time, I am aware
23 of the fact that the way in which you will have to serve your
24 sentence is more onerous than that of other defendants. You
25 won't be getting the same type of credit for good time. We

1  are suffering with the COVID virus problem right now.  You're
2  not going to have the same access to programs that a person
3  who is a U.S. citizen or who has legal status would get.  And
4  so, I think those are fair considerations, plus the fact that
5  this is your first offense, and that you've been fully
6  cooperative with the government.  And I would hope you'll
7  continue to be cooperative with the government since there are
8  related cases that are out there.
9          That having been the case, I'm going to go ahead and
10 impose a variant sentence.  I'm going to have a larger variant
11 sentence than what the government was requesting, but not as
12 much as your attorney is requesting.
13         The sentence the Court thinks is sufficient but
14 greater than necessary to achieve the 3553(a) factors, is a
15 sentence of 60 months in the custody of the Bureau of Prisons
16 with credit for the time already served, to be followed by a
17 period of three years of supervised release.  The terms and
18 conditions of supervision are, first of all, your uniform good
19 behavior, which means you cannot violate any federal, state,
20 or local laws.
21         Do you understand that?  Do you understand?
22         THE DEFENDANT:  Yes, I understand.
23         THE COURT:  And secondly, you have to follow all the
24 conditions of supervision which will be printed on the
25 judgment order and that will be explained to you by the

Tonia M. Harris OCR-USDC/EDVA 703-646-1438
EASTERN DISTRICT OF VIRGINIA

1  probation office.

2  Also, all of those standard conditions of
3  supervision were included in the presentence report on pages
4  13 and 14, which my understanding is you have gotten a copy
5  of.

6  Did you get a copy of the presentence report?

7  THE DEFENDANT: Yes.

8  THE COURT: And did you read it?

9  THE DEFENDANT: Yes.

10  THE COURT: So that had all the normal conditions of
11  supervision. And I'm imposing on top of those the following
12  special conditions:

13  You must fully cooperate with the immigration
14  authorities and any deportation proceedings they bring against
15  you.

16  Do you understand that?

17  THE DEFENDANT: Yes.

18  THE COURT: And if ordered deported from the United
19  States, you cannot return to this country for any reason
20  whatsoever during the period of supervised release.

21  Do you understand that?

22  THE DEFENDANT: Yes.

23  THE COURT: You have no history of drug abuse so the
24  mandatory drug testing is not imposed but a probation officer
25  could demand a drug test from you at any time.

1          Do you understand that you would have to comply?

2          THE DEFENDANT:  Yes.

3          THE COURT:  All right.  Now, the Court finds that
4 you are unable to afford the costs of incarceration,
5 supervision, or any of the statutory fines so those are not
6 imposed.  But there is a $100 special assessment that must be
7 paid.

8          Do you understand that?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Was there any forfeiture in this case?

11         MR. PETERS:  Yes, Your Honor.  It was provided and
12 the defense has a copy.

13         THE COURT:  All right.  That does need to be signed.

14         MR. PETERS:  Your Honor, with the assistance of the
15 court security officer I've provided what's now the
16 forfeiture.

17         THE COURT:  All right.  Mr. Wu, do you understand
18 that you are, when you signed this order, you're giving up any
19 interest that you might have in an 18 karat yellow gold
20 stainless steel Rolex watch that was seized from you?

21         THE DEFENDANT:  Yes.

22         THE COURT:  And also, that to the extent that it's
23 possible, there is also a forfeiture or a money judgment that
24 you've agreed to of $4,326,660.

25         Do you understand that?

1    THE DEFENDANT: Yes.

2    THE COURT: All right. Mr. MacMahon, did you have

3 any designation recommendations after his time locally is

4 resolved?

5    MR. MACMAHON: If I can speak from here, Your Honor.

6    THE COURT: Yes.

7    MR. MACMAHON: I think what Mr. Wu would ask if he

8 can be sent somewhere where there might be some more Chinese

9 speakers. He doesn't really have anybody to converse with or

10 talk to in the detention center where he should stay for a

11 while, Your Honor. But after that, he has some family in

12 southern Florida. Everybody else is from China or Guatemala.

13 I don't have a specific place for him to go.

14    THE COURT: I will think he will be here for a few

15 more months, don't you Mr. Peters?

16    MR. PETERS: Yes, Your Honor. I think that's

17 probably true. We take no position with respect to

18 designation. We would caution, perhaps, a California

19 designation in this case.

20    THE COURT: I would think California might have the

21 largest population of Chinese-speaking defendants, but I'll

22 let you research that.

23    All right. So at this point, I'm not going to make

24 a geographical designation. If you find one that fits the

25 bill --

1  MR. MACMAHON: Your Honor, as I've learned, he does
2  have Chinese speakers in south Florida. He does have one
3  family member he met -- who actually had a translator --
4  THE COURT: Was that Coleman? Coleman is a facility
5  that a lot of people don't want to be in right now.
6  MR. MACMAHON: I don't think that's where he should
7  be. If I come up with more information -- I looked, Your
8  Honor, I couldn't find anywhere where there was a
9  concentration of Chinese speakers. What I saw online about
10 some of the facilities in California, didn't make me want to
11 ask to have Mr. Wu sent there because of the COVID.
12 THE COURT: You might check with the Public
13 Defender's Office, they might have a little bit more
14 information about that.
15 But in any case, at this point, there will not be a
16 designation. All right.
17 The last thing I want to make sure the defendant
18 knows, Mr. Wu, is that even though you entered a plea
19 agreement in which you essentially gave up your right to
20 appeal your conviction and sentence, there are some very
21 limited grounds upon which an appeal may still be possible.
22 And so, Mr. MacMahon, I'm directing that you must discuss with
23 your client whether or not he wants to appeal, such as a
24 jurisdiction issue or ineffective assistance of counsel. And
25 if he does want to appeal, then any appeal must be noticed

1 within 14 days of today's date.

2 You have a right to the help of a lawyer for any
3 appeal. If you are unable to afford to pay for a lawyer
4 yourself, we will appoint one for you.

5 Do you understand all of that, Mr. Wu?

6 THE DEFENDANT: Yes.

7 THE COURT: All right. Mr. MacMahon, you'll have
8 that conversation with your client?

9 MR. MACMAHON: I will, Your Honor.

10 THE COURT: All right. Anything further on this
11 case?

12 MR. PETERS: No, Your Honor.

13 THE COURT: All right. Defendant is remanded.

14 THE DEFENDANT: May I contact Mr. MacMahon or talk
15 to Mr. MacMahon?

16 THE COURT: Down in the lockup?

17 THE MARSHAL: Yes, ma'am.

18 THE COURT: As long as the interpreter is available,
19 you-all can arrange for that. Thank you for your assistance,
20 ma'am.

21 MR. MACMAHON: Thank you, Your Honor.

22 MR. PETERS: Thank you, Your Honor.

23

24 **(Proceedings adjourned at 10:59 a.m.)**

25

CERTIFICATE OF REPORTER

I, Tonia Harris, an Official Court Reporter for the Eastern District of Virginia, do hereby certify that I reported by machine shorthand, in my official capacity, the proceedings had and testimony adduced upon the Sentencing hearing in the case of the **UNITED STATES OF AMERICA versus XUEYONG WU**, Criminal Action No. 1:20-cr-15, in said court on the 29th day of September, 2020.

I further certify that the foregoing 17 pages constitute the official transcript of said proceedings, as taken from my machine shorthand notes, my computer realtime display, together with the backup tape recording of said proceedings to the best of my ability.

In witness whereof, I have hereto subscribed my name, this November 2, 2020.

_____
Tonia M. Harris, RPR
Official Court Reporter